OPINION.
{¶ 1} The plaintiffs-appellants in this case are all property owners in the area of Edwards Road in Norwood, Ohio, owning a combined total of 99 buildings and 25 parcels of vacant land Within recent years, the surrounding area has undergone highly successful commercial redevelopment. Seeking to expand on this redevelopment, on August 26, 2003, the city council of Norwood approved an ordinance adopting what it called the Edwards Road Corridor Renewal Plan. The plan designated the property owners' neighborhood a "deteriorated" or "deteriorating area" under Norwood Municipal Code Chapter 163, in effect making it an "urban renewal area" in which property could be seized by eminent domain.
 {¶ 2} Disagreeing with the designation of their neighborhood as deteriorating, and fearful of eventually losing their property to appropriation, the plaintiffs-appellants brought an action in the court of common pleas to declare the designation invalid and to enjoin Norwood from initiating future appropriation proceedings. Norwood responded by moving for dismissal under Civ.R.12(B)(1). The city argued that the court lacked jurisdiction to issue a declaratory judgment because the special statutory proceedings for appropriation under R.C. Chapter 163 were the plaintiffs-appellants' exclusive remedy. According to the city, the mere designation of the neighborhood as "deteriorated" or "deteriorating" did not create a justiciable controversy absent an effort by the city to actually appropriate the properties.
 {¶ 3} In their first assignment of error, the plaintiffs-appellants argue that the trial court erred in granting Norwood's motion to dismiss because there is no requirement that they wait until an appropriation action is initiated to challenge the designation of their neighborhood as blighted, deteriorated, deteriorating, or in need of urban renewal. Their second assignment of error follows from the first: that such a designation alone creates a justiciable controversy cognizable by the trial court.
 {¶ 4} For the following reasons, we dismiss the appeal of eight of the plaintiffs-appellants (Burton, Motz, Wilker, Ichikawa, Horney, Dahlman, and the Gambles), whose properties became the subject of separate appropriation proceedings during the pendency of the declaratory-judgment action, and who have since been given the opportunity to litigate the issue of whether their neighborhood meets the criteria for urban renewal. But because we believe the harm caused by the designation of the property owners' neighborhood as blighted, deteriorated, or deteriorating was sufficient by itself to create a justiciable controversy, we remand this case to the trial court with respect to the remaining plaintiffs-appellants (the Richards, the Fosters, Doud, Jall, and the Cases), whose property has yet to be the subject of any appropriation.
 INTERVENING EVENTS {¶ 5} As noted, after the plaintiffs-appellants filed their declaratory-judgment action, Norwood instituted appropriation actions against the properties owned by eight of their number: Burton, Motz, Wilker, Ichikawa, Horney, Dahlman, and the Gambles. The separate appropriation actions were pending but undecided at the time Norwood filed its Civ.R.12(B)(1) motion to dismiss the declaratory-judgment action. After the trial court's dismissal of the declaratory-judgment action as to all the plaintiffs-appellants, the separate appropriation actions against the eight were consolidated for the purpose of holding a hearing on Norwood's right to take their respective properties. The trial court (different than that in which the declaratory-judgment action had been filed) conducted a five-day evidentiary hearing and concluded that the designation of the Edwards Road Corridor as a "slum" or "blighted" or "deteriorated" area was not based upon sound reasoning and was therefore an abuse of discretion by Norwood's city council.
 {¶ 6} But with a caveat that it may have concluded differently, the trial court ruled that the city council hadnot abused its discretion in designating the area as "deteriorating." Under Norwood Municipal Code 103.02(c), a deteriorating area is one that is "not a slum, blighted, or deteriorated area," but that, because of certain enumerated factors, is "detrimental to the public health, safety, morals and general welfare, and which will deteriorate or is in danger of deteriorating, into a blighted area." According to the trial court, the Edwards Road Corridor was marked by several of the enumerated factors, including incompatible land uses, non-conforming uses, faulty street arrangements, obsolete platting, and diversity of ownership. Although the evidence was conflicting whether the neighborhood was in danger of in fact becoming blighted, the trial court reasoned that the "great deference" required by judicial review obliged it to accede to the city council's designation.
 {¶ 7} In addition to the designation of the neighborhood as "deteriorating," the trial court also resolved in Norwood's favor two other issues raised by the eight property owners: (1) whether the city's use of eminent domain was pretextual in that it did not seek to eliminate blight but to reap the benefits of tax-increment financing, and (2) whether the city had improperly delegated its eminent-domain authority to private developers.
 NORWOOD'S MOTION TO DISMISS THE APPEAL {¶ 8} In a motion to dismiss the present appeal, Norwood argues that, given intervening events, Burton, Motz, Wilker, Ichikawa, Horney, Dahlman, and the Gambles have now been given the opportunity to litigate the designation of their property as "blighted," "deteriorated," or "deteriorating" in the appropriation actions brought against them. Although they have lost, the city argues that all eight will have the right to appeal the issue once the valuation trials are concluded. According to Norwood, their appeals in the case now before us are moot because they have already been given the very relief they sought through declaratory judgment — the opportunity to present their arguments against the designation of their neighborhood as subject to urban renewal.
 {¶ 9} Further, Norwood argues, the remaining plaintiff-appellants here (the Richards, the Fosters, Doud, Jall, and the Cases) should also have their appeals dismissed, as each had the opportunity to intervene in the appropriation proceedings against the other eight.
 EIGHT OWNERS OUT {¶ 10} The crucial question in this appeal is whether the special statutory proceedings for appropriation of property established under R.C. Chapter 163 precluded the type of declaratory relief sought by the plaintiffs-appellants. Though generally available in addition to other legal and equitable remedies, declaratory judgments are not permitted when they would bypass a legislative scheme to provide for an adjudicatory hearing in special statutory proceedings. See, e.g., ArborHealth Care Co. v. Jackson (1987), 39 Ohio App.3d 183,530 N.E.2d 928.
 {¶ 11} Cases such as Arbor, however, make an express distinction between suits that seek to bypass a special statutory proceeding and those that merely seek to "supplement" the proceeding. See Arbor, paragraph two of the syllabus. For example, the court in State ex rel. Taft v. Franklin Cty. Courtof Common Pleas (1992), 63 Ohio St.3d 190, 586 N.E.2d 125, held that a declaratory-judgment action could be brought to determine whether an organization was a "political action committee" subject to applicable statutes, notwithstanding the jurisdiction of the Ohio Elections Commission over election crimes involving such committees.
 {¶ 12} Furthermore, the Sixth Appellate District, in Stateex rel. Northwood v. Wood Cty. Court of Common Pleas (1996),109 Ohio App.3d 487, 492, 672 N.E.2d 695, held that a court does have jurisdiction to render a declaratory judgment under R.C. Chapter 163 provided that no appropriation proceedings exist. In reaching this conclusion, the Sixth Appellate District observed that in appropriation cases in which the courts had determined that they lacked jurisdiction to render a declaratory judgment, their reasoning was based upon the fact that appropriation proceedings had already begun. Id., citing State ex rel. Smith v. Frost
(1995), 74 Ohio St.3d 107, 656 N.E.2d 673; State ex rel.Albright v. Delaware Cty. Court of Common Pleas (1991),60 Ohio St.3d 40, 572 N.E.2d 1387. The Sixth Appellate District concluded that "these cases would be inapplicable to an appropriation proceeding which has not yet been instituted, and a court ofcommon pleas would have jurisdiction over any issues which mightsupplement any anticipated proceedings pursuant to R.C.Chapter 163." Id. (Emphasis supplied.)
 {¶ 13} In Northwood, the declaratory-judgment action sought to establish whether one political subdivision had the authority, under proceedings authorized by R.C. Chapter 163, to appropriate non-private property owned by another political subdivision. Although we have found no cases that discuss directly whether a blight designation is properly the subject of a declaratory-judgment action, the challenge to such a designation in AAAA Enterprises, Inc. v. River Place Community UrbanDevelopment Corp. (1990), 50 Ohio St.3d 157, 553 N.E.2d 597, originated as a declaratory-judgment action, as opposed to an appropriation proceeding, in the court of common pleas. It appears from a reading of that case that the Ohio Supreme Court assumed sub silentio that a declaratory-judgment action could be used as a vehicle to challenge the designation.
 {¶ 14} The city of Norwood argued below that the holding ofNorthwood applied only where the declaratory-judgment action presented pure questions of law, and that it did not apply when the court was required to take evidence, which in its view would cause the matter to be exclusively the subject of an appropriation proceeding. We consider it a dubious proposition, however, that a trial court's subject-matter jurisdiction would depend upon the need to take evidence. If this were true, the parties could control the jurisdiction of the court by their willingness, or lack of it, to stipulate a record.
 {¶ 15} Furthermore, we agree with the plaintiffs-appellants that it would be fundamentally unfair to make property owners wait until appropriation proceedings are commenced (if they ever are) before they can legally challenge the designation of the area in which their property lies as blighted, deteriorated, or deteriorating. Such a designation is an obvious cloud on their titles, impeding marketability, reducing market values, and chilling any plans for improvement. As noted by one court, "in many instances the physical taking of the property does not occur for a number of years. In the meantime the owner can only wait for that ultimate taking; there is usually no reasonable market otherwise open to him for sale of the property. Moreover, in the interim his good housekeeping incentive generally recedes and deterioration of the building sets in." Lyons v. Camden (1968),52 N.J. 89, 99, 243 A.2d 817. The Lyons court further observed that "it is not enough to assure the property owner that at some time, perhaps years hence, he will receive the market value of his property * * *. Meanwhile, he and his family may well be imprisoned economically in the blighted area because he needs the capital invested in the blighted-area dwelling in order to purchase a new home elsewhere. Consequently, he must endure the deterioration that afflicts a neighborhood at an accelerated pace following a declaration of blight." Id.
 {¶ 16} We hold that a property owner may bring a declaratory-judgment action to challenge a blight/urban-renewal designation provided that an appropriation proceeding does not exist. In the instant case, it is clear that appropriation actions were commenced against the properties belonging to eight of the plaintiffs-appellants (Burton, Motz, Wilker, Ichikawa, Horney, Dahlman, and the Gambles), and therefore it could not be said that the trial court erred in granting the city of Norwood's motion to dismiss against these particular plaintiffs-appellants. Indeed, as the city correctly argues in its motion to dismiss this appeal, these plaintiffs-appellants have already been given in the consolidated appropriation proceedings the recourse they sought through the declaratory-judgment action — the opportunity to litigate the blight designation, and their appeal is moot and subject to dismissal.
 {¶ 17} But concerning the remaining plaintiffs-appellants (the Richards, the Fosters, Doud, Jall, and the Cases), whose properties are not yet the subject of any appropriation action, we hold that the trial court erred by concluding that it lacked jurisdiction to render a declaratory judgment. As for Norwood's argument that these plaintiffs-appellants should have sought to intervene in the appropriation proceedings against the other eight, nothing required them to do so, and even if they had attempted to intervene, there was no guarantee that the trial court would have allowed their intervention. The appropriation proceedings were not a class action in which all putative members of the class were required to "opt in" rather than "opt out." We therefore overrule the motion to dismiss the appeal of these plaintiffs-appellants and reverse the trial court's order of dismissal under Civ.R. 12(B)(1) as it applies only to them. Although these plaintiffs-appellants are entitled to go forward with their declaratory-judgment action, such action would be subject to dismissal should the city of Norwood begin appropriation proceedings against them.
 {¶ 18} In sum, we dismiss the appeals of Burton, Motz, Wilker, Ichikawa, Horney, Dahlman, and the Gambles. But we reverse the trial court's judgment with respect to the Richards, the Fosters, Doud, Jall, and the Cases, and remand this case to the trial court for further proceedings in accordance with law.
Judgment accordingly.
Doan and Sundermann, JJ., concur.