[Cite as *One Energy Ents., L.L.C. v. Dept. of Transp.*, 2019-Ohio-359.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| One Energy Enterprises, LLC et al., | : | |
| Plaintiffs-Appellants, | : | No. 17AP-829 |
| | | (C.P.C. No. 17CV-5513) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Transportation, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on February 5, 2019

**On brief**: *Zeiger, Tigges & Little LLP, Marion H. Little, Jr.*, and *Christopher J. Hogan*, for appellants. **Argued**: *Marion H. Little, Jr.*

**On brief**: *Dave Yost*, Attorney General, *William J. Cole*, and *Eric M. Hopkins*, for appellee. **Argued**: *William J. Cole.*

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Plaintiffs-appellants, One Energy Enterprises, LLC ("One Energy") and OEE XXV, LLC ("OEE" collectively "appellants"), appeal from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 12(B)(6) motion to dismiss of defendant-appellee, Ohio Department of Transportation ("ODOT"). For the reasons that follow, we affirm in part and reverse in part.

{¶ 2} One Energy is a company engaged in the business of constructing large scale wind turbines for industrial customers. OEE is a wholly owned subsidiary of One Energy. OEE currently has a contract to construct and operate two wind turbines for an industrial

facility located in Findlay, Ohio (the "Findlay Project"). One Energy has banking and financing relationships tied to the Findlay Project.

{¶ 3} ODOT is the state agency tasked with administering the Ohio Airport Protection Act ("OAPA"), contained in R.C. 4561.30 to 4561.39. The OAPA requires ODOT consider "applications for and issu[e] and/or deny[] permits" to "tall structures that fall within certain defined surfaces or planes that extend out from airports in Ohio." (Compl. at ¶ 9.)

{¶ 4} On June 20, 2017, appellants filed a complaint against ODOT asserting claims for injunctive and declaratory relief. Appellants asserted the OAPA limited ODOT's regulatory authority to structures that penetrate at least one of the surfaces identified in R.C. 4561.31(A). R.C. 4561.31(A) prohibits any person from commencing to install, or from substantially changing, "any structure or object of natural growth in this state, any part of which will penetrate or is reasonably expected to penetrate into or through any airport's clear zone surface, horizontal surface, conical surface, primary surface, approach surface, or transitional surface without first obtaining a permit." R.C. 4561.31(A)(1) and (2). The six surfaces identified in R.C. 4561.31(A), and elsewhere in the OAPA, will be referred to herein as the ("Imaginary Surfaces"). Whoever violates R.C. 4561.31(A)(1) or (2) "is guilty of a misdemeanor of the third degree," and "[e]ach day of violation constitutes a separate offense." R.C. 4561.31(G)(1).

{¶ 5} Appellants additionally asserted R.C. 4561.32 limited ODOT's rule-making authority under the OAPA to the Imaginary Surfaces. R.C. 4561.32 provides ODOT "shall adopt" rules necessary to administer the OAPA, "based in whole upon the obstruction standards set forth in 14 C.F.R. 77.21 to 77.29, as amended, to uniformly regulate the height and location of structures and objects of natural growth in any airport's clear zone surface, horizontal surface, conical surface, primary surface, approach surface, or transitional surface." R.C. 4561.32(A). *See also* Ohio Adm.Code 5501:1-10-02(C) (stating the "imaginary surfaces around an airport, including clear zone surface, horizontal surface, conical surface, primary surface, approach surface, and transitional surfaces," are "defined by the federal aviation administration (FAA) regulations, as amended").

{¶ 6} In their complaint, appellants alleged that consistent "with the express statutory language" of the OAPA, "no permit application need be filed with ODOT – *and*

*ODOT lacks jurisdiction over* – any structure that will not and/or is not reasonably expected to penetrate one of the *Imaginary Surfaces*." (Emphasis sic.) (Compl. at ¶ 22.) Appellants explained the Findlay Project, which will stand approximately 405 feet above ground level and be located a little beyond four miles from the Findlay Airport, will not penetrate any of the Imaginary Surfaces. (*See* compl. at ¶ 16.) As such, appellants alleged the Findlay Project was beyond the reach of ODOT's regulatory jurisdiction under the OAPA.

{¶ 7}  However, appellants admitted the Findlay Project would constitute an obstruction to air navigation under the applicable federal regulations. The Federal Aviation Administration ("FAA") regulates matters of air navigation and safety within the national airspace. 14 C.F.R. 77 contains the federal regulations applicable to tall structures which penetrate the national airspace. A party must submit notice to the FAA for "[a]ny construction or alteration that is more than 200 ft." above ground level. 14 C.F.R. 77.9(a). Appellants submitted notice of the Findlay Project to the FAA.

{¶ 8}  14 C.F.R. 77.17 identifies objects which constitute obstructions to air navigation. Any object with a height greater than 499 feet above ground level is considered an obstruction to air navigation under 14 C.F.R. 77.17(a)(1). Any object with a height of 200 feet above ground level which is located "within 3 nautical miles of the established reference point of an airport, * * * and that height increases in the proportion of 100 feet for each additional nautical mile from the airport up to a maximum of 499 feet," is considered an obstruction to air navigation under 14 C.F.R. 77.17(a)(2). The Findlay Project's height and location render it an obstruction to air navigation under 14 C.F.R. 77.17(a)(2).

{¶ 9}  Additionally, an object with a height greater than any of the imaginary surfaces described in 14 C.F.R. 77.19 or 77.21 is considered an obstruction to air navigation under 14 C.F.R. 77.17(a)(5). 14 C.F.R. 77.19 identifies the imaginary surfaces which surround civil airports, including the horizontal surface, conical surface, primary surface, approach surface, and transitional surface. 14 C.F.R. 77.21 identifies the imaginary surfaces which surround military airports, including the inner horizontal surface, outer horizontal surface, conical surface, primary surface, approach clearance surface, transitional surface, and clear zone surface. Each surface identified in 14 C.F.R. 77.19 and 77.21 is defined by a precise geometric description.

{¶ 10} If a proposed structure will constitute an obstruction to air navigation, and an aeronautical study concludes that the structure "would have a substantial aeronautical impact," the "FAA will issue a Determination of Hazard to Air Navigation." 14 C.F.R. 77.31(c). If a proposed structure will constitute an obstruction to air navigation, but an aeronautical study concludes the proposed structure "would not have a substantial aeronautical impact to air navigation," the FAA will issue a "Determination of No Hazard to Air Navigation." 14 C.F.R. 77.31(d). Appellants explained that the receipt of a "No Hazard" determination from the FAA on the Findlay Project, or any similar project, was a necessary prerequisite to appellants' "ability to fulfill their contracts and financing arrangements to construct and operate the same." (Compl. at ¶ 17.) The FAA issued the desired "No Hazard" determination to the Findlay Project. (Compl. at ¶ 33.)

{¶ 11} Appellants asserted ODOT had taken the official position that its regulatory jurisdiction under the OAPA extended beyond the Imaginary Surfaces to "other 'obstructions,' including the Section 77.17(a)(1) & (a)(2) Obstruction Standards." (Compl. at ¶ 24.) Appellants explained ODOT had expressed its official position through the testimony of two ODOT office of aviation officials,[1] John Stains, an office of aviation employee, and James Bryant, the administrator of the office of aviation. The testimony occurred in an administrative hearing in *In re One Energy, LLC v. Ohio Dept. of Transp.*, 2016-DOT-647-OE, 2016-DOT-4888-OE, which concerned ODOT's denial of permits for certain wind turbines located in Putnam County (the "Putnam County Project").[2] The Putnam County Project is "distinct from [and has] nothing to do" with the turbines at issue in the Findlay Project. (Compl. at ¶ 7.)

{¶ 12} During the administrative hearing, Stains and Bryant testified about proposed amendments to the OAPA contained in 2017 Sub.H.B. No. 49 ("H.B. 49").[3] Appellants attached excerpts from the hearing transcript to their complaint as Exhibit A, and attached the H.B. 49 proposed amendments to the OAPA to their complaint as Exhibit

---

[1] ODOT has delegated to the administrator of the office of aviation the authority to "[r]eject, approve or disapprove applications for permits" filed under the OAPA. Ohio Adm.Code 5501:1-10-03(B)(1).

[2] Appellants' counsel admitted at oral argument that, although the entity involved in the Putnam County Project (One Energy, LLC) is legally separate from the two entities at issue in the present case (One Energy Enterprises, LLC and OEE XXV, LLC), all of these entities share common ownership.

[3] The proposed amendments to the OAPA in 2017 SubH.B. No. 49 were removed from the version of the bill which passed the Ohio Senate. *See* 2017 Am.Sub.H.B. No. 49. The final version of the bill, which became effective June 29, 2017, did not contain any amendments to the OAPA.

B.  H.B. 49 sought to amend R.C. 4561.31(A) by replacing the reference to the Imaginary Surfaces with the term "navigable airspace." (Compl. Ex. B.) "Navigable airspace" would be defined in R.C. 4561.01(L) as the "imaginary surfaces around an airport as specified in 14 C.F.R. part 77, as amended." (Compl. Ex. B.)

{¶ 13} Stains explained during the hearing that H.B. 49 "clarifie[d] the Department's position that we are required to enforce Part 77 as a whole." (Compl. Ex. A, Hearing Tr. at 102.) Stains noted that, although it was the office of aviation's "position that the current language [of the OAPA] already [said] that" ODOT had the authority to enforce all of 14 C.F.R. 77, H.B. 49 "clarifie[d] that." (Compl. Ex. A, Hearing Tr. at 102.) Bryant stated that "the end result" of H.B. 49 would be "to state that the Department has the ability to regulate and exercise jurisdiction over all Part 77 airspace irrespective of whether it's one of these six imaginary surfaces or not." (Compl. Ex. A, Hearing Tr. at 184.) In response to a question asking whether, under the current version of the OAPA, the Imaginary Surfaces were the surfaces a structure could not "penetrate into without the State providing some form of permit," Bryant testified as follows:

> No, not really. There is six surfaces, and there's an additional surface which we felt that we had jurisdiction to also administer that we didn't feel that the Ohio Revised Code when it was prepared in 1991 or '92 adequately explained that. So we've always felt that we had the jurisdiction to administer the Part 77, we just wanted to make it clear.

(Compl. Ex. A, Hearing Tr. at 179.)

{¶ 14} In Count 1 of their complaint, appellants asserted a claim for tortious interference with their contract for the Findlay Project and/or their prospective business relationship. Appellants alleged that "in or about March 2017" Stains, acting within the course and scope of his employment with ODOT, engaged "in efforts to encourage the Findlay Airport and/or airport officials to issue comments to the FAA *opposing the [Findlay] Project*" with the "intent of seeking to prevent the [Findlay] Project from proceeding." (Emphasis sic.) (Compl. at ¶ 31.) Appellants requested an injunction to prevent ODOT from urging or encouraging any third party to oppose the Findlay Project or any similar project, and to prevent ODOT from asserting jurisdiction over any structure that did not penetrate one of the Imaginary Surfaces.

{¶ 15} In Count 2 of their complaint, appellants asserted a claim for declaratory relief. Appellants asserted that a justiciable controversy existed between the parties, as ODOT had taken the official position that its jurisdiction under the OAPA extended beyond the Imaginary Surfaces while the language of the OAPA limited ODOT's regulatory jurisdiction to the Imaginary Surfaces. Appellants requested an order declaring ODOT had no authority under the OAPA to regulate structures that did not penetrate Imaginary Surfaces.

{¶ 16} On July 7, 2017, ODOT filed a Civ.R. 12(B)(6) motion to dismiss the complaint. ODOT argued that, as it had not denied appellants any permits for the Findlay Project, appellants' claim for declaratory relief was neither ripe nor justiciable. ODOT asserted appellants had failed to exhaust their administrative remedies, explaining that "if a permit(s) [was] denied" under the OAPA, appellants could request a hearing pursuant to R.C. 119.06 and could appeal any ruling from such hearing to the common pleas court under R.C. 119.12. (Mot. to Dismiss at 10.) ODOT alleged appellants failed to state a claim for tortious interference as there was no indication any Findlay Airport officials "ever objected to FAA or took any other adverse action as a result of Mr. Stains' actions." (Mot. to Dismiss at 6.)

{¶ 17} ODOT also asserted the OAPA did "not limit ODOT's regulatory authority and jurisdiction to only 'Imaginary Surfaces' listed in R.C. 4561.31(A)(1)." (Mot. to Dismiss at 3.) ODOT argued that in order "to ensure the safety of aircraft in landing and taking off at an airport, it must enforce the obstruction standards found in 14 C.F.R. 77.17." (Mot. to Dismiss at 14.) Appellants filed a memorandum in opposition to ODOT's motion to dismiss on July 28, 2017.

{¶ 18} On July 31, 2017, appellants filed a motion for partial summary judgment solely on their claim for declaratory relief. On August 1, 2017, appellants filed the complete first volume of the administrative hearing transcript from *In re One Energy, LLC*.[4]

---

[4] Appellants note in the present action that ODOT is applying its "expansive interpretation of its own jurisdiction to all proposed projects, even as to ones for which no permit has been sought." (Appellants' Brief at 17.) The transcript from *In re One Energy, LLC* demonstrates that, with respect to the Putnam County Project, One Energy, LLC never "submit[ted] an application to the State of Ohio"; yet, ODOT "denie[d] the permit[s]." (Hearing Tr. at 18-19, 22.) Stains confirmed that, for both turbines of the Putnam County Project, "there was no application or form transmitted by One Energy" to ODOT seeking a permit for the turbines. (Hearing Tr. at 119-20.) Stains explained that ODOT utilizes software which "has a feature that pulls down all 7460s filed with the FAA" that relate to Ohio airspace. (Hearing Tr. at 116-17.) Thus, any

{¶ 19} ODOT filed a memorandum contra appellants' motion for partial summary judgment on August 21, 2017 maintaining that "it [was] authorized by the OAPA to regulate for safety the height of structures that do or will violate the federal Part 77 airspace obstruction standards." (ODOT's Memorandum Contra Partial Summ. Jgmt. at 3.)

{¶ 20} On November 2, 2017, the trial court issued a decision and entry granting ODOT's motion to dismiss the complaint and denying appellants' motion for partial summary judgment. The court noted a declaratory judgment action could not be used to "bypass a special statutory proceeding of an agency that has exclusive jurisdiction over a particular subject matter." (Decision at 5.) As ODOT possessed the "exclusive power to regulate the granting and/or denying of permits for which an application has been filed under R.C. 4561.33," the court concluded appellants' declaratory judgment action was "merely a substitute for the administrative process provided by the legislature in R.C. Chapter 4561." (Decision at 6-7.) Similarly, the court concluded that appellants had failed to exhaust their administrative remedies as they had an " 'equally serviceable remedy' in this case in the form of the administrative process contained in Chapter 4561." (Decision at 8.) The court further concluded that "unless and until the permits that are at the heart of this matter are denied by ODOT, there exist[ed] no real controversy presenting issues ripe for judicial resolution, and no justiciable controversy [would] exist until that time." (Decision at 8.) The court held appellants' tortious interference claim rested on the same allegations as appellants' claim for declaratory relief. The court dismissed the complaint "with prejudice," and found appellants' motion for partial summary judgment to be moot. (Decision at 9.)

{¶ 21} On November 8, 2017, the court issued an order amending the November 2, 2017 judgment entry to state the dismissal was without prejudice.

_____

FAA filing which concerns Ohio airspace "is automatically downloaded by the Department," and ODOT treats that automatic download "as an application being submitted to the Department of Transportation." (Hearing Tr. at 117-18.) ODOT has utilized this software "[s]ince approximately mid July of 2016." (Hearing Tr. at 122.) The OAPA, however, requires that an applicant submit an application for a permit to ODOT. R.C. 4561.33(A) provides that "[a]n applicant for a permit required by [R.C. 4561.31] shall file with [ODOT] an application made on forms the department prescribes." Although an applicant "may file a copy of the [FAA] form 7460-1" in lieu of the "application prescribed by the department," R.C. 4561.33 still requires that an applicant file an application for a permit with ODOT. Moreover, R.C. 4561.34 provides that ODOT "shall grant or deny a permit for which an application has been filed under section 4561.33." *See also* Ohio Adm.Code 5501:1-10-06; 5501:1-10-07.

{¶ 22} Appellants appeal, assigning the following errors for our review:

[I.] The trial court erred, as a matter of law, in dismissing all claims of Plaintiffs/Appellants One Energy Enterprises LLC and OEE XXV LLC.

[II.] The trial court erred in denying, as moot, Plaintiffs' partial motion for summary judgment as to the extent of Defendant/Appellee the Ohio Department of Transportation's ("ODOT") statutory jurisdiction/authority under the Ohio Airport Protection Act, R.C. 4561.30 to 4561.39 (the "OAPA").

{¶ 23} Although the trial court dismissed the action without prejudice, this court has jurisdiction to address the instant appeal. Ohio appellate courts have jurisdiction to review only final appealable orders of lower courts within their districts. Article IV, Section 3(B)(2), Ohio Constitution; R.C. 2501.02. Appellate courts have the duty to sua sponte examine any deficiencies in jurisdiction. *Price v. Jillisky*, 10th Dist. No. 03AP-801, 2004-Ohio-1221, ¶ 7.

{¶ 24} Generally, "a dismissal without prejudice constitutes 'an adjudication otherwise than on the merits' with no res judicata bar to refiling the suit." *Johnson v. H & M Auto Serv.*, 10th Dist. No. 07AP-123, 2007-Ohio-5794, ¶ 7, quoting *Thomas v. Freeman*, 79 Ohio St.3d 221, 225 (1997), fn.2. As such, a dismissal without prejudice generally is not a final appealable order "so long as a party may refile or amend a complaint." *Johnson* at ¶ 7. *See also B.H. v. State Dept. of Adm. Servs.*, 10th Dist. No. 16AP-747, 2017-Ohio-9030, ¶ 6.

{¶ 25} However, "a dismissal grounded on a complaint's 'failure to state a claim upon which relief can be granted' constitutes a judgment that is an 'adjudication on the merits.' As a result, res judicata bars refiling the claim." *State ex rel. Acres v. Ohio Dept. of Job & Family Servs.*, 123 Ohio St.3d 54, 2009-Ohio-4176, ¶ 15. In *George v. State*, 10th Dist. No. 10AP-4, 2010-Ohio-5262, ¶ 10, the trial court dismissed the parties' claims pursuant to Civ.R. 12(B)(6), and stated that the dismissal was "without prejudice to refiling." Relying on *Acres*, this court held that "[t]o the extent that the trial court dismissed certain causes of action because they failed to state a claim, those rulings are appealable." *George* at ¶ 14.

{¶ 26} Accordingly, pursuant to *Acres* and *George*, the trial court's order dismissing the complaint for failure to state a claim was a final appealable order.

{¶ 27} Appellants' first assignment of error asserts the trial court erred in granting ODOT's motion to dismiss the complaint. A motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted tests the sufficiency of the complaint. *Volbers-Klarich v. Middletown Mgt.*, 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11. In order for a court to dismiss a case pursuant to Civ.R. 12(B)(6) "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. The court must presume all factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Bridges v. Natl. Eng. & Contracting Co.*, 49 Ohio St.3d 108, 112 (1990). In considering a Civ.R. 12(B)(6) motion to dismiss, a trial court may not rely on allegations or evidence outside the complaint. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997).

{¶ 28} When reviewing a judgment rendered on a Civ.R. 12(B)(6) motion to dismiss, our standard of review is ordinarily de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. However, a trial court's dismissal of a declaratory judgment action is reviewed under an abuse of discretion standard. *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, paragraph two of the syllabus, following *Bilyeu v. Motorists Mut. Ins. Co.*, 36 Ohio St.2d 35, 37 (1973). The abuse of discretion standard applies only "to the trial court's holding concerning the appropriateness of the case for declaratory judgment, i.e., the matter's justiciability"; courts apply "a de novo standard of review in regard to the trial court's determination of legal issues in the case." *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 1. *See also Youngstown City School Bd. of Edn. v. State*, 10th Dist. No. 17AP-775, 2018-Ohio-2532, ¶ 8.

{¶ 29} An abuse of discretion connotes more than an error of law or judgment; it implies that the court's action was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "An appellate court may find an abuse of discretion when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' " *Bellamy v. Montgomery*, 10th Dist. No. 11AP-1059, 2012-Ohio-4304, ¶ 7, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.).

{¶ 30} A declaratory judgment action is a civil action and provides a remedy in addition to other legal and equitable remedies available. *Victory Academy of Toledo v. Zelman*, 10th Dist. No. 07AP-1067, 2008-Ohio-3561, ¶ 8, citing *Aust v. Ohio State Dental Bd.*, 136 Ohio App.3d 677, 681 (10th Dist.2000). R.C. Chapter 2721, the Declaratory Judgments Act, is remedial in nature; its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations and it is to be liberally construed and administered. *Swander Ditch Landowners' Assn. v. Joint Bd. of Huron & Seneca Cty. Commrs.*, 51 Ohio St.3d 131, 134 (1990), citing *Radaszewshi v. Keating*, 141 Ohio St. 489, 496 (1943).

{¶ 31} R.C. 2721.03 provides that any person "whose rights, status, or other legal relations are affected by a constitutional provision, statute, [or] rule" may have determined "any question of construction or validity arising under the instrument, constitutional provision, statute, [or] rule * * * and obtain a declaration of rights, status, or other legal relations under it." Thus, the construction and interpretation of statutes is a recognized function of declaratory action. *Town Ctrs. Ltd. Partnership v. Ohio State Atty. Gen.*, 10th Dist. No. 99AP-689 (Apr. 4, 2000). The essential elements for declaratory relief are: (1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties. *Aust* at 681.

{¶ 32} For a real controversy to exist "there must be a 'genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Town Ctrs.*, quoting *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13 (8th Dist.1988). A controversy is justiciable when it presents "issues that are ripe for judicial resolution and which will have a direct and immediate impact on the parties." *Cristino v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 13AP-772, 2014-Ohio-1383, ¶ 22, citing *Stewart v. Stewart*, 134 Ohio App.3d 556, 558 (4th Dist.1999). The United States Supreme Court developed the following two-fold test to determine whether a controversy is justiciable in character: "first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied at that stage." *Toliet Goods Assn. v. Gardner*, 387 U.S. 158, 162 (1967). Ripeness is a question of timing, and the "ripeness doctrine seeks to prevent courts from engaging in premature adjudication." *Johnson v. Ferguson-Ramos*, 10th Dist. No.

04AP-1180, 2005-Ohio-3280, ¶ 22, citing *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89 (1998). Such "premature claims are not 'justiciable.' " *Id.*, quoting *Stewart* at 558.

{¶ 33} In *Burger Brewing Co. v. Liquor Control Comm., Dept. of Liquor Control*, 34 Ohio St.2d 93 (1973), the court held that an administrative "regulation need not be violated to present a justiciable controversy," as the "regulation itself essentially involve[d] legal questions." *Id.* at 98. *See also Ohio State Pharmaceutical Assn. v. Wickham*, 61 Ohio App.3d 488, 494 (10th Dist.1989), citing *Pack v. Cleveland*, 1 Ohio St.3d 129, 131 (1982) (noting that "[a] justiciable controversy does not require an actual violation of a statute, but rather turns on the relationship of parties under the statute at issue"); *Peltz v. S. Euclid*, 11 Ohio St.2d 128, 131 (1967). The regulation at issue in *Burger Brewing Co.* prohibited manufacturers and wholesale distributors of beer from initiating specials or temporary price cuts, and prevented manufacturers from fixing the price per case or draft package at which a wholesale distributor could sell beer to retailers in Ohio. Several breweries filed a declaratory judgment action against the Liquor Control Commission challenging the validity of the regulation; the wholesale beer association of Ohio intervened as a defendant in the action. Although the breweries never violated the regulation, the court concluded that a real justiciable controversy existed.

{¶ 34} As the breweries sought "a judgment declaring the regulation void in order to avoid its economic constraints," and the wholesalers sought to "invok[e] the regulation to set a ratio of the price charged them and the retailers," the parties had adverse legal interests. *Id.* at 97. As the regulation "regulate[d] the plaintiffs' businesses - - their pricing and marketing systems," the impact of the case on the breweries was "sufficiently direct and immediate to render the issues appropriate for judicial review." *Id.* at 98. Furthermore, as the breweries were "convinced that the regulation [was] invalid," the court observed that the breweries were "placed in a perplexing dilemma: Either change their customary pricing and marketing procedures in order to conform with the regulation, or challenge the regulation by disobedience and face severe sanctions," including revocation of their liquor permits. *Id.* at 99. It was "to lift people from the horns of such a dilemma that the Declaratory Judgment Act was enacted." *Id.*, citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967). Thus, because the breweries were "subjected to the application of [the

regulation]," their action for declaratory judgment was not "premature and would not constitute mere advice upon a potential controversy." *Id.* at 100. *See also Town Ctrs.*

{¶ 35} The trial court in this case concluded that until ODOT denied appellants permits for the Findlay Project, the case would not present a real justiciable controversy. However, ODOT need not deny appellants permits for the Findlay Project for the present dispute to be justiciable. Rather, the language of the OAPA "essentially involves legal questions." *Burger Brewing Co.* at 98.

{¶ 36} The present case presents a real controversy between parties with adverse legal interests. Through the testimony of ODOT office of aviation officials in an administrative proceeding, and through the motions and memoranda filed in the present case, ODOT has taken the definite position that its regulatory jurisdiction under the OAPA extends beyond the Imaginary Surfaces identified in R.C. 4561.31(A) to include all of the airspace identified in 14 C.F.R. 77.17. *See Town Ctrs.* citing *Karches v. Cincinnati*, 38 Ohio St.3d 12 (1988) (concluding the final decision requirement, typically applicable only in zoning cases, was nevertheless satisfied in the case as the attorney general "admitted in her answer to plaintiff's complaint" that she had taken a "definite position on interpreting the statute in question"). Appellants, in contrast, contend the OAPA limits ODOT's regulatory authority to the Imaginary Surfaces. As the Findlay Project will penetrate the airspace described in 14 C.F.R. 77.17(a)(2), but does not penetrate any of the Imaginary Surfaces, ODOT's interpretation of its regulatory jurisdiction adversely affects appellants' interests. As appellants have a pending contract to construct the Findlay Project and have banking and financing relationships related to the Findlay Project, the dispute between the parties is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

{¶ 37} The present controversy is also justiciable in character. Resolution of the controversy will determine whether appellants must seek an OAPA permit for the Findlay Project or whether the OAPA does not apply to the Findlay Project. As appellants have received federal approval to begin construction of the Findlay Project, resolution of the present controversy will have a direct and immediate impact on the parties. The issues tendered, seeking a construction of the OAPA, are appropriate for judicial resolution, and the hardship to appellants if relief is denied at this stage is notable. Absent resolution by declaratory judgment, appellants are placed in the following dilemma: seek a permit for the

Findlay Project, which they believe ODOT has no statutory authority to issue, or challenge ODOT's official position by constructing the Findlay Project without first obtaining a permit. If appellants construct the Findlay Project without obtaining a permit, and if a permit is in fact required, appellants could face criminal penalties under R.C. 4561.31(G).

{¶ 38} The right to pursue " 'a legitimate recognized trade [business], subject only to the restrictions made necessary in order to protect the public health, safety and welfare, constitutes a valuable property right protected by law.' " *Burger Brewing Co.* at 98, quoting *Wilson v. Cincinnati*, 171 Ohio St. 104, 108 (1960). Appellants' ability to pursue their business of constructing wind turbines in Ohio, and specifically appellants' ability to complete their contract for the Findlay Project and satisfy their banking and financing relationships related thereto, are directly affected by ODOT's interpretation of its regulatory jurisdiction under the OAPA. Accordingly, speedy relief is necessary to preserve rights which may otherwise be lost or impaired.

{¶ 39} The instant case presents the essential elements for declaratory relief. Moreover, as appellants have pending contracts to construct a structure which is potentially subjected to the OAPA, the present declaratory judgment action is not premature.

{¶ 40} The trial court's statement that the present matter would not become ripe until ODOT denied appellants the permits that were "at the heart of this matter," and other similar statements from the court, demonstrate the trial court's erroneous belief that appellants were seeking permits for the Findlay Project. (Decision at 8.) The court noted that, if ODOT "denie[d] any of the permits sought by [appellants], including those currently being considered by ODOT," appellants could request a hearing under R.C. 119.06. (Decision at 6.) Similarly, the court stated that "[d]espite [appellants'] insistence that this action seeks different relief than that in the administrative proceeding below – that is, that the permits they seek be granted versus the extent of ODOT's statutory authority in making that determination," the declaratory judgment action was "inextricably entwined with the issue that [was] being decided in the administrative proceeding." (Decision at 6-7.)

{¶ 41} There is no evidence in the record to support the court's belief that administrative proceedings regarding the Findlay Project were pending. Appellants alleged in their complaint that "no permit application need be filed with ODOT" regarding the Findlay Project, as ODOT did not possess "regulatory authority or jurisdiction over any

structures" that did not penetrate an Imaginary Surface. (Compl. at ¶ 22, 23.) In their memorandum contra ODOT's motion to dismiss the complaint, appellants noted they had not "challenged ODOT's issuance or denial of a permit – the only action subject to a R.C. Chapter 119 administrative proceeding under the OAPA." (Memo in Opposition at 2.)

{¶ 42} The trial court's conclusion that the present case did not present a real or justiciable controversy, based on the court's erroneous factual assumption that appellants were seeking a permit for the Findlay Project, was an abuse of discretion.

{¶ 43} The court also dismissed the declaratory judgment action based on its conclusion the action was an improper attempt to bypass a special statutory procedure, and because appellants had failed to exhaust their administrative remedies.

{¶ 44} "[A]ctions for declaratory judgment and injunction are inappropriate where special statutory proceedings would be bypassed." *State ex rel. Albright v. Delaware Cty. Court of Common Pleas*, 60 Ohio St.3d 40, 42 (1991). To circumvent a special statutory procedure by way of declaratory judgment "would nullify the legislative intent to have specialized * * * questions initially determined by boards and agencies specifically designed and created for that purpose." *State ex rel. Iris Sales Co. v. Voinovich*, 43 Ohio App.2d 18, 23 (8th Dist.1975). Thus, where a "specialized statutory remedy is available in the form of an adjudicatory hearing, a suit seeking a declaration of rights which would bypass, rather than supplement, the legislative scheme ordinarily should not be allowed." *Arbor Health Care Co. v. Jackson*, 39 Ohio App.3d 183, 186 (10th Dist.1987). *See also State ex rel. Smith v. Frost*, 74 Ohio St.3d 107, 112 (1995) (declaratory judgment could not be used to "bypass the statutory procedure" provided for "annexation"); *Galion v. Am. Fedn. & Mun. Emps., Ohio Council 8, AFL-CIO, Local No. 2243*, 71 Ohio St.3d 620 (1995), paragraph two of the syllabus (declaratory judgment action could not be "maintained to circumvent the clear legislative intent of R.C. Chapter 2711" regarding arbitration); *State ex rel. Gelesh v. State Med. Bd.*, 172 Ohio App.3d 365, 2007-Ohio-3328, ¶ 27 (10th Dist.) (declaratory judgment could not be used to "bypass the special statutory proceedings" provided to determine "whether a physician has violated R.C. Chapter 4731").

{¶ 45} A court's decision to dismiss a declaratory judgment action because the matter is committed to a special statutory proceeding is "tantamount to a holding that courts have no jurisdiction to hear the actions in the first place." *Albright* at 42. *See also*

*Zupancic v. Wilkins*, 10th Dist. No. 08AP-472, 2009-Ohio-3688, ¶ 13, quoting *Kazmaier Supermarket v. Toledo Edison Co.*, 61 Ohio St.3d 147, 153 (1991). "[A] dismissal based on the lack of subject-matter jurisdiction over a declaratory action 'inherently raises questions of law, and our review is de novo.' " *Zarbana Industries v. Hayes*, 10th Dist. No. 18AP-104, 2018-Ohio-4965, ¶ 13, quoting *Zupancic* at ¶ 6. *Accord Arnott* at ¶ 16 (noting courts have "[n]ever * * * deferred to the judgment of the trial court on issues of law"); *Zupancic* at ¶ 6.

{¶ 46} Appellants note their request for declaratory relief relates to "structures for which no permit had been sought, no permit has been denied, and no administrative proceeding is or was pending." (Appellants' Brief at 1.) Thus, appellants assert there is no special statutory proceeding applicable to their declaratory judgment action. *See Bd. of Edn. of the Loveland City School Dist. v. Bd. of Trustees of Symmes Twp.*, 1st Dist. No. C-170407, 2018-Ohio-1731, ¶ 18 (noting the "special statutory proceeding" on which the township relied "[did] not apply in th[e] case").

{¶ 47} In *Arbor Health Care Co.*, the plaintiff filed an application for a certificate of need, seeking to obtain the necessary agency approval to construct a new skilled nursing facility. The certificate of need process, codified in R.C. Chapter 3702, is a specialized statutory proceeding. While the plaintiff's certificate of need application was pending, the plaintiff filed a declaratory judgment action asserting the agency was improperly interpreting certain rules regarding calculating annual bed-need and batching of applications. The court held the action for "declaratory relief was inappropriate," and noted that merely because the administrative process would take "more time than plaintiff desire[d] [was] not a sufficient ground for bypassing the specialized procedure outlined in R.C. Chapter 3702." *Id.* at 186.

{¶ 48} In *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146 (1992), the director of the applicable agency informed the plaintiff-hospital, in response to the hospital's inquiry, that a certificate of need was required to change level of care of the hospital's neonatal intensive care unit. The hospital filed an application for a certificate of need which the agency denied, and the hospital appealed the agency's denial to the certificate of need review board. While the administrative appeal was pending, the hospital filed an action for declaratory judgment asserting the certificate of need laws did not apply to the re-designation of the level of care of its neonatal intensive care unit. The court concluded that,

because the agency director had "the authority to make reviewability determinations, as well as the authority to grant or deny [certificate of need] applications," the director's actions on "both * * * triggered the special remedial proceedings contained in Ohio's [certificate of need] laws and rendered immediate declaratory relief for [the hospital] unnecessary and inappropriate." *Id.* at 151.

{¶ 49} Thus, in both *Arbor Health Care Co.* and *Fairview Gen. Hosp.*, the plaintiffs were participating in the administrative process when they sought a declaratory judgment on matters related to their administrative proceedings. As such, the declaratory judgment actions in both cases were attempts to bypass the applicable special statutory proceedings. *Accord Champaign Cty. Nursing Home v. Tompkins*, 10th Dist. No. 98AP-255, 2003-Ohio-1706, ¶ 34, 46 (holding that, as the plaintiffs "had an [administrative] appeal" pending when they filed the action for declaratory judgment, the declaratory judgment action was an attempt to "bypass, rather than supplement" the legislative scheme applicable to Medicaid reimbursement); *Huntsman v. State*, 5th Dist. No. 2016CA00206, 2017-Ohio-2622, ¶ 36 (concluding the plaintiff's "declaratory judgment action," which concerned "the same issue that [was] being decided in the administrative proceeding," was "merely a substitute for the administrative process"). *Compare State ex rel. Taft v. Court of Common Pleas*, 63 Ohio St.3d 190, 195 (1992) (concluding the trial court "had authority to hear a declaratory judgment action concerning [a political action committee's] rights under R.C. 3599.03" because neither the Ohio Elections Commission nor the Ohio Secretary of State "ha[d] exclusive authority over alleged violations of R.C. 3599.03"); *Gamble v. Norwood*, 1st Dist. No. C-040019, 2004-Ohio-4661, syllabus (concluding the trial court erred in dismissing the property owners' actions for declaratory judgment "where no appropriation actions had begun").

{¶ 50} In *Aust*, this court observed that "the issue is whether a special statutory procedure has been set forth by the legislature to address a particular type of case, not whether a 'proceeding' has actually commenced." *Id.* at 683. In that case, the Ohio State Dental Board ("Board") had suspended a dentist's license and, during the suspension, the dentist had placed his practice into a revocable trust, transferred legal title of the practice to a trustee, and named himself sole beneficiary of the trust. When the Board began an investigation to determine whether this arrangement violated the Dental Practice Act, the

dentist filed an action for declaratory relief asserting the arrangement did not violate the Dental Practice Act. As "R.C. 4715.03(D) [gave] the Board the power to enforce the provisions of the Dental Practice Act, investigate evidence of any violation of the Act, and conduct disciplinary proceedings," the "investigation initiated by the Board [was] part of the special statutory proceedings set forth in R.C. 4715.03(D)." *Id.* As such, the dentist was "not permitted to bypass the special statutory proceedings by filing a declaratory judgment action." *Id.* at 684.

{¶ 51} In the present action, appellants seek declaratory relief to determine in the first instance whether the OAPA administrative process applies to structures, like the Findlay Project, which do not penetrate Imaginary Surfaces. Unlike *Arbor Health Care Co.* and *Fairview Gen. Hosp.*, appellants do not have an administrative proceeding regarding the Findlay Project pending. Appellants have not sought, and ODOT has neither granted nor denied, an OAPA permit to the Findlay Project. *See* R.C. 4561.33(A); 4561.34(A).

{¶ 52} Moreover, unlike *Aust*, there is no special statutory procedure applicable to the issue presented in appellants' declaratory judgment action. The OAPA concerns ODOT's authority to issue and deny permits, and a party's ability to file an administrative appeal from an adverse ruling on their permit application. There is no provision in the OAPA by which a party may ask ODOT, outside of the permitting process, to determine whether the OAPA applies to a particular structure. *Compare* R.C. 3702.52(A) (under the certificate of need statutes, a party may submit a "request for a ruling" to the agency director and the director "shall" issue a ruling on whether the "particular proposed project is a reviewable activity"); *Fairview Gen. Hosp.* at 152 (explaining that the director's initial determination that a certificate of need was required to change the level of the neonatal intensive care unit was a "reviewability determination" which was "immediately appealable to the [certificate of need review board]").

{¶ 53} Resolution of appellants' declaratory judgment action will supplement, rather than bypass, the special statutory proceeding contained in the OAPA. If the trial court concludes the OAPA does apply to the Findlay Project, appellants will be required to obtain an OAPA permit before they begin construction on the project. If the trial court concludes the OAPA does not apply to the Findlay Project, appellants may immediately commence construction assured that they will not be subject to criminal penalties under

R.C. 4561.31(G). *See State ex rel. Northwood v. Wood Cty. Court of Common Pleas*, 109 Ohio App.3d 487, 491 (6th Dist.1996) (concluding the plaintiff's action for declaratory judgment, which sought to ascertain whether the city had the authority under R.C. Chapter 163 to appropriate non-private property owned by another political subdivision, "would, therefore, supplement rather than completely bypass the legislative scheme" regarding appropriations, because "[i]f the trial court determine[d] that R.C. Chapter 163 applies, the appropriation proceeding [could] commence," and "[i]f R.C. Chapter 163 does not apply, then the trial court [could] also make any other appropriate determinations").

{¶ 54} The trial court erred in holding appellants' declaratory judgment action was an improper attempt to circumvent a special statutory proceeding.

{¶ 55} The exhaustion of administrative remedies doctrine is a rule of judicial administration providing " 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *State ex rel. Teamsters Local Union No. 436 v. Bd. of Cty. Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, ¶ 19, quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). Where an administrative proceeding is applicable to a particular action, a plaintiff "is not entitled to a declaratory judgment where failure to exhaust administrative remedies is asserted and maintained." *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304 (1981), paragraph three of the syllabus (holding that declaratory relief was unavailable where the plaintiff-landowner was "entitled under R.C. Chapter 2506 to appeal the order of a planning commission granting a variance").

{¶ 56} "The doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained." *Jones v. Chagrin Falls*, 77 Ohio St.3d 456 (1997), syllabus. *See also Driscoll v. Austintown Assocs.*, 42 Ohio St.2d 263, 276 (1975), citing Civ.R. 8(C) and 12(H). ODOT timely asserted the failure to exhaust administrative remedies defense by raising it in its Civ.R. 12(B)(6) motion to dismiss. *See State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 33 (1996). *See also OMG MSTR LSCO, LLC v. Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-223, 2018-Ohio-4843, ¶ 16-17.

{¶ 57} An appellate court reviews a trial court's dismissal of a "declaratory-judgment action based on the conclusion that proceeding with the action would have been improper

because [the plaintiff] failed to exhaust administrative remedies" under an "abuse-of-discretion standard." *SP9 Ent. Trust v. Brauen*, 3d Dist. No. 1-14-03, 2014-Ohio-4870, ¶ 14, citing *Arnott* at ¶ 13.

{¶ 58} A plaintiff need not exhaust administrative remedies prior to instituting a declaratory judgment action "if there is no administrative remedy available which can provide the relief sought, * * * or if resort to administrative remedies would be wholly futile." *Karches* at 17, citing *Kaufman v. Newburgh Hts.*, 26 Ohio St.2d 217 (1971) and *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324 (1969). *Accord Teamsters Local Union No. 436* at ¶ 24 (noting "parties need not pursue their administrative remedies if doing so would be a futile or a vain act"). Additional exceptions to the exhaustion of administrative remedies doctrine include if the available remedy is onerous or unusually expensive, *Karches* at 17, or if the plaintiff is contesting the validity or constitutionality of a statute. *Fairview Gen. Hosp.* at 149; *Jones* at 460-61.

{¶ 59} For the reasons noted above, there is no available administrative remedy which can provide the relief appellants seek. Appellants do not seek an OAPA permit for the Findlay Project but, rather, seek a ruling regarding the extent of ODOT's regulatory jurisdiction under the OAPA. As the OAPA does not provide a mechanism by which a party may seek a ruling regarding the applicability of the OAPA to a particular structure outside of the permitting process, there is no administrative remedy applicable to the present action.

{¶ 60} The trial court stated appellants had an equally serviceable remedy in this action through the OAPA administrative process. However, even if it were possible for appellants to file an application seeking a permit for the Findlay Project and to assert in the administrative proceeding that ODOT lacked the statutory authority to issue the permit they sought, such proceeding would not be an equally serviceable remedy in comparison to the present declaratory judgment action. *Compare Buckeye Quality Care Ctrs., Inc. v. Fletcher*, 48 Ohio App.3d 150, 154 (10th Dist.1988) (noting the "fact that plaintiffs may at some point in the future fail to comply with the rules, lose their Medicaid certification due to an administrative adjudication, and bring the same challenge on administrative appeal" did not alter the court's conclusion that the trial court erred in dismissing the plaintiffs'

declaratory judgment action because, if the "plaintiffs continue[d] indefinitely to comply with the rules, then they may be forever foreclosed from challenging the rules' adoption").

{¶ 61} Generally, "proceedings for declaratory relief will not be entertained where another 'equally serviceable' remedy has been provided for the character of the case at hand." *Swander Ditch* at 135. In *Swander Ditch*, the court held because the declaratory judgment action would resolve "all issues in one proceeding," it was "a more serviceable option than the numerous appeals required by the administrative process." *Id.* *Accord Herrick v. Kosydar*, 44 Ohio St.2d 128, 130-31 (1975) (holding that a class action seeking a declaratory judgment was the "superior remedy," as the "[a]dministrative remedies would require each of those claimants to file a separate refund application, a requirement which [could] hardly be considered an equally serviceable alternative to a single declaratory judgment action").

{¶ 62} If ODOT denies a request for a permit under the OAPA, the applicant may request a hearing, pursuant to R.C. 119.06, and may appeal the results from such hearing to the common pleas court pursuant to R.C. 119.12. *See* Ohio Adm.Code 5501:1-10-09(B). However, if a permit is approved, "it shall be valid for a period of two years" and "may be renewed, either verbally or in writing." Ohio Adm.Code 5501:1-10-09(C). There is no mechanism by which a party may appeal an ODOT determination granting a permit. Ohio Adm.Code 5501:1-10-05 similarly provides that ODOT "may grant a permit which includes a waiver from full compliance with the obstruction standards," and that ODOT's "decision to grant a waiver and the terms and conditions imposed thereunder shall be final."

{¶ 63} Appellants filed a motion asking this court to take judicial notice of the construction permit with waiver issued in *In re One Energy, LLC* to the Putnam County Project. As ODOT "does not object" to this court taking judicial notice of the permit, we take judicial notice of the permit solely to demonstrate the effect of the administrative rules. (Memo of Appellee in Response to Appellants' Mot. for Judicial Notice at 3.)

{¶ 64} The construction permit states that, although the Putnam County Project will exceed "obstruction standards; specifically, the structure exceeds 14 CFR Part 77.17(a)(2) by 167 feet," a waiver was "being issued pursuant [to] ORC §4561.36 and OAC §5501:1-10-05." (Appellants' Mot. to Take Judicial Notice, Ex. A.) In the administrative proceedings regarding the Putnam County Project, One Energy, LLC argued that ODOT's regulatory

jurisdiction was limited to structures that penetrated the Imaginary Surfaces. (*See* compl., Ex. A.) Because ODOT issued the permit with a waiver, it informed One Energy, LLC that there was "no need for adjudication on the merits" of the issues presented in the administrative action. (Appellants' Mot. to Take Judicial Notice, Ex. A.) ODOT affirms that the "waiver decision is final and non-appealable." (Memo of Appellee in Response to Appellants' Mot. for Judicial Notice at 2.)

{¶ 65} Thus, by issuing the permit with a waiver to the Putnam County Project, ODOT refused to rule on appellants' jurisdictional argument and One Energy, LLC cannot appeal the permit. Accordingly, even if appellants were to attempt to obtain a ruling on their jurisdictional question by seeking a permit under the OAPA, a permit they believe ODOT has no statutory authority to issue, the administrative rules demonstrate that ODOT could continuously avoid the jurisdictional question by granting appellants permits or permits with a waiver. The trial court's conclusion that appellants had failed to exhaust available administrative remedies, based on the court's mistaken belief that appellants were seeking an OAPA permit for the Findlay Project, was an abuse of discretion.

{¶ 66} Based on the foregoing, we hold the trial court erred in dismissing appellants' claim for declaratory relief. Appellants' complaint set forth a viable claim for declaratory relief which is ripe for resolution. Accordingly, we remand the action to the trial court for further proceedings on the declaratory judgment action. *See Harris v. Ohio Dept. of Veterans Servs.*, 10th Dist. No. 16AP-895, 2018-Ohio-2165, ¶ 31 (holding that "the trial court must declare the rights of the parties when the complaint sets forth a viable claim for declaratory relief"); *Williams v. Gilligan*, 10th Dist. No. 73AP-69 (May 22, 1973), citing *Dyar v. Bingham*, 100 Ohio App. 304 (4th Dist.1955) (noting that courts of appeal "do not have original jurisdiction which enables them to entertain an action for a declaratory judgment").

{¶ 67} Appellants also assert the trial court erred in dismissing their claim for tortious interference with their contract for the Findlay Project and/or their prospective business relationships. The trial court concluded appellants' tortious interference claim "rest[ed] upon and [arose] from the same allegations" as those asserted in appellants' "request for declaratory judgment (i.e., the extent of ODOT's authority and jurisdiction under the OAPA)." (Decision at 8.) As such, the court dismissed the tortious interference

claim for "all of the reasons" it had dismissed the declaratory judgment action. (Decision at 9.)

{¶ 68} However, appellants' tortious interference claim was based on appellants' contention that Stains had "physically appeared in Hancock County" and encouraged Findlay Airport officials to oppose the Findlay Project at the FAA. (Compl. at ¶ 31.) Although the FAA issued the No Hazard determination to the Findlay Project, appellants asserted that ODOT would "continue [to] engage in similar, unlawful tactics as to [appellants'] prospective projects involving similar turbines of similar height and in similar proximity to airports in Ohio." (Compl. at ¶ 33.) Appellants alleged ODOT's conduct had caused performance of their contract to become "more burdensome and/or expensive, and otherwise threaten[ed] irreparable harm," and further alleged that ODOT's conduct threatened to prevent appellants "from acquiring future contractual and/or business relationships." (Compl. at ¶ 34, 38.)

{¶ 69} Thus, appellants' tortious interference claim was not based on the same allegations as those asserted in appellants' claim for declaratory relief. The trial court erred in dismissing the tortious interference claim for the reasons it provided. A reviewing court, however, "is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 92 (1994). "An appellate court should affirm a trial court's judgment if any grounds support it." *Ford v. Brooks*, 10th Dist. No. 11AP-664, 2012-Ohio-943, ¶ 24.

{¶ 70} Appellants assert they adequately pled a claim for relief under Restatement of the Law 2d, Torts, Section 766A (1979), which defines the tort of intentional interference with another's performance of his own contract. *Compare Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995) (adopting the Restatement of the Law 2d, Torts, Section 766 (1979) definition of the tort of intentional interference with performance of contract). Section 766A provides that "[o]ne who intentionally and improperly interferes with the performance of a contract * * * between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome," will be "subject to liability to the other for the pecuniary loss resulting to him." Appellants contend that, because they alleged ODOT made their "performance of

contracts with customers more burdensome[,] [n]othing more [was] required to assert a viable claim under Section 766A." (Appellants' Brief at 44.)

{¶ 71} Although Civ.R. 8(A) requires only that the complaint contain a short and plain statement of the claim showing that the party is entitled to relief, "the complaint must still set forth operative facts showing the basis for the claim." *Schmidt v. Northcoast Behavioral Healthcare*, 10th Dist. No. 10AP-565, 2011-Ohio-777, ¶ 9. Thus, while a court considering a Civ.R. 12(B)(6) motion must presume all factual allegations in the complaint are true, the court need not accept as true any unsupported and conclusory legal propositions advanced in the complaint. *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 7 (10th Dist.). *Accord State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490 (1994) (holding that "unsupported conclusions of a complaint are not considered admitted and are not sufficient to withstand a motion to dismiss").

{¶ 72} Appellants failed to plead any factual allegations to support their contention that ODOT's conduct made their performance more burdensome or expensive. Indeed, there is no statement in the complaint explaining what additional costs or burdens appellants allegedly took on in order to perform their contract. Accordingly, the trial court was not required to accept the unsupported conclusory statements in appellants' complaint as true. Moreover, appellants failed to allege they suffered a pecuniary loss due to ODOT's conduct. *Compare Patton Boggs, LLP v. Chevron Corp.*, 791 F.Supp.2d 13, 31-32 (D.C.Dist.2011) (holding the complaint failed to state a claim for tortious interference under Section 766A as "Section 766A itself states that it creates liability for 'pecuniary loss,' " the "complaint identified no such loss resulting from defendants' conduct," and the plaintiff's contention that its contract "suffered irreparable injury" was insufficient as it did not "identify any resulting pecuniary harm"). Appellants failed to state a claim for tortious interference with another's performance of his own contract under Section 766A.

{¶ 73} Appellants also failed to state a claim for tortious interference with prospective contractual relationships. *See Gray-Jones v. Jones*, 137 Ohio App.3d 93, 100 (10th Dist.2000) (noting that "Ohio law also recognizes the tort of intentional interference with a prospective contractual relationship"). Restatement of the Law 2d, Torts, Section

766B (1979) defines the tort of intentional interference with prospective contractual relation as follows:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

{¶ 74} Under tortious interference with prospective contractual relation, "a formal contract does not have to be in place in order for business interference to occur"; rather, it is "sufficient if a person, without a privilege, induces or otherwise purposely causes a third party not to enter into a business relationship." *Contract Crush & Screen Co. v. Jack F. Neff Sand & Gravel*, 11th Dist. No. 96-L-043 (Mar. 7, 1997), citing S*mith v. Ameriflora 1992,* 96 Ohio App.3d 179, 186 (10th Dist.1994). *See also Advanced Power Sys., Inc. v. Hi-Tech Sys. Inc.*, 801 F.Supp. 1450, 1459 (E.D. Pa.1992) (noting that "a plaintiff may not rest a claim for tortious interference with prospective contractual relations on a mere hope that additional contracts or customers would have been forthcoming"; rather, the complaint must "allege facts that, if true, would give rise to a reasonable probability that particular anticipated contracts would have been entered into"); *Horizon AG-Prods. v. Precision Sys. Eng.*, D.C.N.M. No. CIV 09-1109 JB/DJS (Sept. 28, 2010), quoting *Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 159 (1981) (noting that, in order to state a claim for relief under Section 766B, "a plaintiff must allege that 'there was an actual prospective contractual relation which, but for the [Defendant's] interference, would have been consummated' ").

{¶ 75} Although appellants alleged ODOT's conduct threatened to prevent them from acquiring future contracts and/or business relationships, appellants failed to plead any operative facts to support this allegation. While it was unnecessary for appellants to allege the existence of a formal contract, appellants needed to allege they had actual prospective business relationships with which ODOT's conduct interfered. Appellants' vague reference to hypothetical future contracts and business relationships was

insufficient. Appellants also failed to allege any facts indicating they suffered a pecuniary harm due to ODOT's conduct.

{¶ 76} Pursuant to our de novo review, we find appellants failed to state a claim for tortious interference with their contract for the Findlay Project and/or prospective business relationships. As such, the trial court ultimately did not err in granting ODOT's motion to dismiss appellants' complaint with respect to appellants' claim for tortious interference.

{¶ 77} Based on the foregoing, appellants' first assignment of error is sustained in part and overruled in part.

{¶ 78} Appellants' second assignment of error asserts the trial court erred in denying appellants' motion for partial summary judgment. The trial court denied the motion for partial summary judgment as moot based solely on the court's decision granting ODOT's motion to dismiss the complaint. As we have determined the trial court erred in dismissing appellants' claim for declaratory relief, we sustain appellants' second assignment of error for the limited purpose of remanding the case to the trial court to consider the merits of appellants' motion for partial summary judgment.

{¶ 79} Based on the foregoing, appellants' second assignment of error is sustained.

{¶ 80} ODOT presents a cross-assignment of error in its brief. However, ODOT never filed a notice of cross-appeal in the present action. App.R. 3(C)(1) provides, in part, that "[a] person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * * shall file a notice of cross appeal within the time allowed by App.R. 4." App.R. 4(A)(1) provides that "a party who wishes to appeal from an order that is final upon its entry shall file the notice of appeal * * * within 30 days of that entry." If a notice of appeal "is timely filed by a party, another party may file a notice of appeal within the appeal time period otherwise prescribed by this rule or within ten days of the filing of the first notice of appeal." App.R. 4(B)(1).

{¶ 81} "The time requirements for filing a cross-appeal pursuant to App.R. 4(A) are mandatory and jurisdictional." *Kaplysh v. Takieddine*, 35 Ohio St.3d 170 (1988), paragraph one of the syllabus. Accordingly, when a party fails to comply with the time requirements of App.R. 4 in filing their notice of cross-appeal, an appellate court is without jurisdiction to consider the merits of the cross-assignment of error. *Tod v. Cincinnati State Technical & Community College*, 10th Dist. No. 10AP-656, 2011-Ohio-2743, ¶ 94. *Accord Donahue*

*v. Silberstein*, 10th Dist. No. 90AP-588 (Oct. 16, 1990) (observing that, as the "appellee failed to comply with the time requirements of App.R. 4(A) in filing his cross-appeal, [this court was] without jurisdiction to consider the merits of his assignments of error").

{¶ 82}  As ODOT never filed a notice of cross-appeal, this court lacks jurisdiction to consider the merits of ODOT's purported cross-assignment of error.

{¶ 83}  Having sustained in part and overruled in part appellants' first assignment of error, and having sustained appellants' second assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

TYACK and LUPER SCHUSTER, JJ., concur.